FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2014 FEB 26 AM 11: 29

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| GENE RENARD WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-054 |
| | ) | |
| TERRI BUSSEY, Deputy Warden of Care | ) | |
| and Treatment; SGT. CODEY; LT. CALER; | ) | |
| OFFICER TOMMY; and LT. JONES, | ) | |
| | ) | |
| Defendants.[1] | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Coffee Correctional Facility in Nicholls, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff originally filed this case in the Northern District of Georgia, but the case was transferred to this District because the events alleged in the complaint occurred at Augusta State Medical Prison in Grovetown, Georgia, which is located in this District. (Doc. no. 3.) This Court has given Plaintiff two opportunities to correct certain pleading deficiencies in his amended complaint, and Plaintiff has submitted an amended complaint correcting these deficiencies. (See doc. nos. 15, 17, 18.) As Plaintiff's amended complaint was filed IFP, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

---

[1] The **CLERK** is **DIRECTED** to modify the docket in conformity with Plaintiff's amended complaint. (See doc. no. 18, pp. 1, 4.)

I. SCREENING OF THE AMENDED COMPLAINT

A. BACKGROUND

Plaintiff names the following Defendants: (1) Terri Bussey, Deputy Warden of Care and Treatment, Augusta State Medical Prison; (2) Sergeant Codey; (3) Lieutenant Caler;[2] (4) Officer Tommy; and (5) Lieutenant Jones. (See doc. no. 18, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must when screening his complaint, the facts are as follows.

On October 8, 2012, an inmate named Timothy Taylor, who is a gang member, robbed Plaintiff. (Id. at 5.) When Plaintiff asked Unit Manager Ms. McGrue to be moved to protective custody, she responded that it was up to classification to move Plaintiff. (Id.) Plaintiff spoke to Dr. Hobby about the incident, and Dr. Hobby notified Sergeant Walker, who informed Plaintiff that he had to write a statement of what happened. (Id.) Plaintiff submitted a written statement to Sergeant Walker, who tried to give the paperwork to Defendant Caler and Ms. McDowell, but neither would take the paperwork. (Id.) Plaintiff then returned to Ms. McGrue, who had Defendants Codey and Caler take Plaintiff to segregation on November 14, 2012. (Id.) After Defendants Codey and Caler placed Plaintiff in a two-man cell, Plaintiff informed Defendant Caler he was supposed to be in a one-man cell, pursuant to being placed in protective custody. (Id.) Plaintiff states that Defendants Caler and Codey "knew from my statements that gang members were stealing my commissary." (Id.)

---

[2]Plaintiff refers to this Lieutenant as "Caler" in the caption of his complaint and when naming the Defendants, (see doc. no. 18, pp, 1, 4), and as "Collier" in the statement of his claim, (see id. at 5, 8). For ease of reference, and since this is the name in Plaintiff's caption, the Court will refer to this Defendant as "Caler" herein.

Thereafter, Defendant Tommy told Plaintiff that his new cellmate was a "related gang member." (Id.) The new cellmate was at recreation call when Plaintiff first arrived. After the cellmate returned from recreation, Plaintiff states that everything was fine for a few hours. However, sometime between 4:00 and 4:30 p.m., the cellmate told Plaintiff that Timothy Taylor told him to stab Plaintiff. (Id. at 6.) Around 4:15 p.m., Plaintiff began "beating on the door" and told Defendant Tommy that he was supposed to be in a one-man cell and that his life had been threatened. (Id.) Plaintiff's cellmate told Defendant Tommy that he "was going to do something" to Plaintiff. (Id.) Defendant Tommy responded that he needed a sergeant to order a cell transfer for Plaintiff, and he walked away. (Id.)

At 6:00 p.m., Plaintiff started beating on the door again. (Id.) When Defendant Tommy came to the door, Plaintiff's cellmate showed Defendant Tommy a knife. (Id.) When Defendant Tommy returned five minutes later with Defendant Jones, Plaintiff told Defendant Jones that his cellmate had a knife and had threatened to stab him. (Id.) Plaintiff asked Defendant Jones to move him to the showers until he could be placed in a one-man cell, but Defendant Jones stated that he could not move Plaintiff because it was "count-time." (Id.) The cellmate told Defendant Jones he was going to stab Plaintiff if Plaintiff was not moved, but Defendant Jones left. (Id.)

Plaintiff started beating on the door fifteen to twenty minutes later, and the cellmate stabbed Plaintiff thirteen times. (Id.) Plaintiff fought back and the fight lasted about five minutes. (Id.) When Plaintiff beat on the door to the cell again, Defendant Jones and another officer cuffed Plaintiff and took him to medical. (Id.) After Plaintiff received stitches, Defendant Jones took him to the medical ward to complete a written

statement. (Id. at 6-7.) At Defendant Jones' request, Plaintiff filled out another statement the next day because the initial statement had blood on it. (Id. at 7.) Plaintiff alleges that he kept asking for a grievance form until he was given one on November 29, 2012, which he returned the same day. (Id.)

Plaintiff alleges that Defendants Caler, Jones, Codey, and Tommy violated procedure by their above actions and Defendant Bussey violated SOP Policy by "not properly training, supervising, and monitoring officers under her command." (Id. at 8-9.) Plaintiff seeks compensatory and punitive damages, and "[a]ny additional relief this court deems just, proper, and equitable." (Id. at 10.)

## B. DISCUSSION

### 1. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State an Eighth Amendment Claim Against Defendants Bussey, Caler, and Codey.

Plaintiff contends that all Defendants showed deliberate indifference to his safety. The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d

5

1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981). In order to state a viable claim for deliberate indifference to safety, the Eleventh Circuit requires that Defendants have knowledge of a particular threat or fear felt by the plaintiff. Rodriguez v. Sec'y for the Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007) (noting that an Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk); Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (*per curiam*) (same). Furthermore, "merely negligent failure to protect an inmate from attack does not justify liability under § 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). Stated another way, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 835, 838 (1994).

Here, Plaintiff has failed to state a viable Eighth Amendment claim for deliberate indifference to his safety against Defendants Bussey, Caler, and Codey, because he does not allege that any of them were subjectively aware of a substantial risk of serious harm before he was assaulted or that they failed to alleviate any significant risk. Indeed, Plaintiff does not allege any specific facts that these defendants were aware Plaintiff was subject to a threat from his new cellmate. Moreover, while Plaintiff alleges that he was placed with a cellmate who had "apparent ties" with another inmate who had robbed him, he does not allege that Defendants Bussey, Caler, or Codey were aware of any relationship between these inmates or how it might pose a risk of harm to Plaintiff. See Rodriguez, 508 F.3d at 617.

Additionally, a prison official can be liable under the Eighth Amendment for failing to take reasonable steps to protect the victim of an ongoing assault by another inmate. See Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (*per curiam*) (citing Skritch v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002)); see also Murphy v. Turpin, 159 F. App'x 945, 948 (11th Cir. 2005) (*per curiam*) (applying deliberate indifference standard to claim that prison official failed to intervene in inmate-on-inmate assault). Here, however, Plaintiff fails to allege that Defendants Bussey, Caler, and Codey were present or at least nearby during his assault such that they would have had an opportunity to protect him. Thus, Plaintiff's claims based on deliberate indifference to his safety against Defendants Bussey, Caler, and Codey fail.

### 3. No § 1983 Claim Based on Violation of Prison Regulations.

Plaintiff also asserts that the misconduct alleged in his complaint violated unspecified "SOP Regulations" of the Georgia Department of Corrections. However, an allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (noting that many prison regulations "are primarily designed to guide correctional officers in the administration of a prison" and that "such regulations are not designed to confer rights on inmates"); Mathews v. Moss, No. 11-14547, 2013 WL 462392, at *2 (11th Cir. Feb. 8, 2013) (*per curiam*) (district court properly dismissed prisoner's claim concerning prison officials' alleged failure to follow prison procedures with respect to grievances) (citing Bingham, 654 F.3d at 1177-78); see also Gaines v. Stenseng, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [Plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has

stated no cognizable claim under § 1983."); Rienholtz v. Campbell, 64 F. Supp. 2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table) ("In a § 1983 action, a federal court considers whether a *constitutional* right has been infringed, not whether bureaucratic procedures have been violated."); Taylor v. White, CIV.A. 11-0377-CG-N, 2012 WL 404588, at *5 (S.D. Ala. Jan. 10, 2012), *adopted by* 2012 WL 403849 (S.D. Ala. Feb. 7, 2012) ("A claim based on a prison official's failure to follow prison regulations or state regulations, without more, simply does not state a claim for deprivation of a constitutional right."). Accordingly, Plaintiff has failed to state a separate claim upon which relief may be granted based on Defendants' alleged violation of prison policies.

### 4. Plaintiff Fails to State a Supervisory Liability Claim Against Defendant Bussey.

Plaintiff also fails to state a claim against Defendant Bussey, Deputy Warden of Care and Treatment, because (1) the amended complaint does not allege that she personally participated in any of the alleged acts or omissions; and (2) she is not liable for the acts of the officers and prison staff members against whom Plaintiff directs his allegations. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Florida Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*). Likewise, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel,

Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold a supervisory official or employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff does not allege that Defendant Bussey actually participated in any purported constitutional violation, but instead Plaintiff alleges in the most general and conclusory fashion that Defendant Bussey "violated SOP regulations by not properly training, supervising, and monitoring officers under her command." (See doc. no. 18, p. 9.)

Similarly, Plaintiff fails to allege a causal connection between Defendant Bussey's actions and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional

9

rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff has proffered no allegation suggesting any history of widespread abuse or that Defendant Bussey was responsible for any custom or policy relating to Plaintiff's claims. Also, Plaintiff has raised no inference that Defendant Bussey directed her subordinates to act unlawfully or knew they would act unlawfully and failed to stop them from doing so. Thus, Plaintiff has not made the necessary showing to hold Defendant Bussey liable under a *respondeat superior* theory. Hartley, 193 F.3d at 1269; Kruger 164 F. Supp.2d at 1333-34. Accordingly, Plaintiff fails to state a claim against Defendant Bussey under § 1983 for supervisory liability.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims based on (1) deliberate indifference to safety in violation of the Eighth Amendment against Defendants Bussey, Caler, and Codey, (2) violation of prison regulations against all defendants, and (3) supervisory liability against Defendant Bussey be **DISMISSED**, and that Defendants Bussey, Caler, and Codey be **DISMISSED** from

this case.³

SO ORDERED this 26th day of February, 2014, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

---

³In a simultaneously issued Order, the Court is allowing Plaintiff to proceed with his Eighth Amendment deliberate indifference to safety claims against Defendants Tommy and Jones.