IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| GENE RENARD WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-054 |
| | ) | |
| LT. JONES, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate incarcerated at Coffee Correctional Facility in Nicholls, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983, concerning events that allegedly took place at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is presently before the Court on Defendant's pre-answer motion to dismiss. (Doc. no. 27.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** (doc. no. 27) and that this case be **DISMISSED** and **CLOSED**.

## I.  BACKGROUND

With respect to Lt. Jones, the sole remaining defendant in this action, Plaintiff alleges the following facts.

On October 8, 2012, an inmate named Timothy Taylor, who is a gang member, robbed Plaintiff. (Doc. no. 18, p. 5.) When Plaintiff asked Unit Manager Ms. McGrue to be moved to protective custody, she responded that it was up to classification to move Plaintiff. (Id.) Plaintiff spoke to Dr. Hobby about the incident, and Dr. Hobby notified Sergeant Walker, who informed Plaintiff that he had to write a statement of what happened. (Id.) Plaintiff submitted a written statement to Sergeant Walker, who tried to give the paperwork to Lieutenant Caler and Ms. McDowell, but neither would take the paperwork. (Id.) Plaintiff then returned to Ms. McGrue, who had Sergeant Codey and Lt. Caler take Plaintiff to segregation on November 14, 2012. (Id.) After Sgt. Codey and Lt. Caler placed Plaintiff in a two-man cell, Plaintiff informed Lt. Caler he was supposed to be in a one-man cell, pursuant to being placed in protective custody. (Id.) Plaintiff states that Lt. Caler and Sgt. Codey "knew from my statements that gang members were stealing my commissary." (Id.)

Thereafter, Officer Tommy told Plaintiff that his new cellmate was a "related gang member." (Id.) The new cellmate was at recreation call when Plaintiff first arrived. After the cellmate returned from recreation, Plaintiff states that everything was fine for a few hours. However, sometime between 4:00 and 4:30 p.m., the cellmate told Plaintiff that Timothy Taylor told him to stab Plaintiff. (Id. at 6.) Around 4:15 p.m., Plaintiff began "beating on the door" and told Officer Tommy that he was supposed to be in a one-man cell and that his life had been threatened. (Id.) Plaintiff's cellmate told Officer Tommy that he "was going to do something" to Plaintiff. (Id.) Defendant Tommy responded that he needed a sergeant to order a cell transfer for Plaintiff, and he walked away. (Id.)

At 6:00 p.m., Plaintiff started beating on the door again. (Id.) When Defendant Tommy came to the door, Plaintiff's cellmate showed Officer Tommy a knife. (Id.) When Officer Tommy returned five minutes later with Defendant Jones, Plaintiff told Defendant Jones that his cellmate had a knife and had threatened to stab him. (Id.) Plaintiff asked Defendant Jones to move him to the showers until he could be placed in a one-man cell, but Defendant Jones stated that he could not move Plaintiff because it was "count-time." (Id.) The cellmate told Defendant Jones he was going to stab Plaintiff if Plaintiff was not moved, but Defendant Jones left. (Id.)

Plaintiff started beating on the door fifteen to twenty minutes later, and the cellmate stabbed Plaintiff thirteen times. (Id.) Plaintiff fought back and the fight lasted about five minutes. (Id.) When Plaintiff beat on the door to the cell again, Defendant Jones and another officer cuffed Plaintiff and took him to medical. (Id.) After Plaintiff received stitches, Defendant Jones took him to the medical ward to complete a written statement. (Id. at 6-7.) At Defendant Jones' request, Plaintiff filled out another statement the next day because the initial statement had blood on it. (Id. at 7.)

Plaintiff filed informal grievance number 138875 on November 27, 2012, raising the issues he describes in his amended complaint. (Doc. no. 27-11.) The grievance was considered and discussed with Plaintiff on December 13, 2012, but not resolved. (Id.) Plaintiff took no further action with respect to informal grievance number 138875. (Doc. no. 27-1, p. 3.)

On January 3, 2013, Plaintiff filed formal grievance number 140924, raising the same issues as informal grievance number 138875. (Doc. no. 27-12, pp. 2-3.) On January 9, 2013, prison officials rejected formal grievance 140924 for being filed out of time. (Id. at 4.) Plaintiff appealed the rejection of formal grievance number 140924 on January 14, 2013, arguing that he

3

never received an informal grievance until November 28, 2012. (Id. at 5.) The appeal was denied. (Id. at 6.)

On January 29, 2013, Plaintiff filed formal grievance number 142850, raising the same issues as informal grievance number 138875 and formal grievance 140924. (Doc. no. 40-1.) On February 27, 2013, prison officials rejected formal grievance 142850 for being filed out of time. (Id. at 3, 5.) Plaintiff appealed the rejection on of formal grievance 142850 on March 21, 2013. (Id. at 12.) The appeal was denied. (Id. at 13.)

## II. DISCUSSION

The Court finds, as explained below, that Plaintiff has failed to exhaust his administrative remedies and thus recommends dismissal solely on this threshold issue.

### A. Defendant's Motion to Dismiss Should Be Granted Because Plaintiff Failed to Exhaust His Administrative Remedies.

#### 1. The Legal Framework

Where, as here, Defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, Defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with Defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the

disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### 2. The Administrative Grievance Procedure

Because the date of the alleged incident is November 13, 2012, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on June 1, 2004. (See doc. no. 27-6.) Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2)

---

[1]Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

& (D)(2). The SOP requires that an inmate be given a response to his informal grievance within ten calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden or Superintendent has thirty calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2), (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

### 3. Plaintiff's Failure to Exhaust

Here, Plaintiff's claim should be dismissed because Defendant has produced copies of informal grievance number 138875, and formal grievance numbers 140924 and 142580, showing that Plaintiff failed to timely submit a formal grievance after his informal grievance was denied. (See doc. nos. 27-11, 27-12, 40-1.) Under the grievance procedure in effect at the time of the alleged incident and when Plaintiff filed his informal grievance, Plaintiff had five business days from receipt of the written resolution of his informal grievance on December 13, 2012 to file a formal grievance. SOP IIB05-0001 § VI(C)(2). Plaintiff did not file a formal grievance until January 3, 2013. (Doc. no. 27-12.) Because this was well outside of the five-day window, Plaintiff's formal grievance was untimely. Because Plaintiff's grievances failed to comply with

7

the administrative deadline, they do not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90.

Plaintiff argues for the first time in his "amendment to his objection" to Defendant's motion to dismiss that any failure on his part to exhaust his administrative remedies is due to prison staff denying him a formal grievance "during the time period that the informal grievance was ruled on." (Doc. no. 44, p. 2.) Therefore, a factual dispute exists as to whether the grievance process was available to Plaintiff. Taking Plaintiff's factual allegations as true, in accordance with the first step of the Turner analysis, the instant complaint is not subject to dismissal, and the Court must proceed to step two of the analysis and make specific findings to resolve the factual dispute. Turner, 541 F.3d 1082-83.

Defendant has provided evidence that the grievance process was fully available to Plaintiff at all relevant times, and that Plaintiff was well-practiced in utilizing it. Plaintiff's grievance history shows that he filed two unrelated grievances before the alleged assault, in addition to the three already discussed, and never made any mention of difficulty in obtaining formal grievance forms. (See doc. no. 27-8.) When prison officials denied formal grievance number 140924 as untimely, Plaintiff made no mention of difficulty in obtaining that formal grievance, but instead only said that he had difficulty in obtaining informal grievance number 138875. (Doc. no. 27-12, p. 5.) However, informal grievance 138875 was considered by prison officials and Plaintiff received a written result on December 13, 2012, but he failed to file a formal grievance within the required time or pursue any appeal of the denial of the grievance. (Doc. no. 27-11, p. 2.) Instead, Plaintiff waited until December 28, 2012 to obtain formal grievance number 140924, but did not submit the form until six days later, on January 3, 2013. (Doc. no. 27-12, p. 2.)

Defendant has produced the affidavit of Madie Kitchens, the Grievance Coordinator at ASMP, and Terri Bussey, Deputy Warden of Care and Treatment at ASMP, who testified that grievance forms are made available to all inmates in their respective facilities at all times, including in the nursing unit. (See doc. no. 27-4, ¶¶ 6-7; doc. no. 27-2, ¶ 5.) Defendant has also produced the affidavit of the grievance counselor assigned to Plaintiff and the officer from the nursing unit in which Plaintiff was a patient from the date of the incident until December 4, 2012. Both testified that they would have provided Plaintiff a grievance form if he requested one. (Doc. no. 27-5, ¶ 6; doc. no. 27-3, ¶ 7.) Indeed, Deputy Warden Bussey testified that, "[a]n officer failing to provide a grievance may be in violation of Department policy and subject to disciplinary action," and that "[i]If there was a problem with [Plaintiff] receiving a form, he could have raised the issue with me during my inspection of the unit and I would have instructed staff to provide a form." (Doc. no. 27-2, ¶ 4, 9.)

Plaintiff provides no evidence to rebut the overwhelming evidence provided by Defendant showing that the grievance process was fully available to him. Therefore, it is clear that the grievance process was available to Plaintiff and he used it several times without issue, only raising the availability of formal grievance forms after it was clear from Defendant's briefing that Plaintiff had not followed the grievance procedure properly. Even when he raised the issue, he did so in the most conclusory and general fashion, merely alleging that unidentified prison personnel denied an unspecified request for a grievance form on an unspecified date. (See doc. no. 44, p. 2.) As Plaintiff's grievances were filed out of time, and without good cause for their untimeliness, they failed to comply with the administrative deadline and do not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159. Therefore, Plaintiff's claim is procedurally defaulted, Johnson, 418 F.3d at 1159, and Defendant's motion to

dismiss should be granted. In light of the Court's conclusion that Defendant's motion to dismiss should be granted due to Plaintiff's failure to exhaust his administrative remedies, it is unnecessary to address the merits of Defendant's additional arguments.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** (doc. no. 27) and that this case be **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 30th day of October, 2014, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA